UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOANN CHAVES<br>　　Plaintiff, | :<br>: |
| v. | :　CIVIL ACTION NO.<br>:　3-06-cv-1589 (JCH) |
| EXXON MOBILE CORPORATION<br>d/b/a PLAINFIELD MOBIL-SOUTHBOUND,<br>and MOBILE CORPORATION,<br>　　Defendants. | :<br>:<br>:　JANUARY 25, 2008<br>: |

**RULING RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. NO. 42)**

**I.　INTRODUCTION**

The plaintiff, Joann Chaves, brings this action against defendants Exxon Mobile Corporation doing business as the Plainfield Mobil-Southbound and Mobile Corporation (collectively "defendants") for negligence arising out of a fall she took on the curb outside a Mobile Service Station. This action was originally filed in Connecticut Superior Court but was removed by defendants based on diversity among the parties. See Notice of Removal (Doc. No. 1). Defendants move this court to grant summary judgment as to Chaves's complaint.

**II.　FACTS[1]**

Joann Chaves ("Chaves") and her daughter, Melissa Chaves, left their home in Marlboro Massachusetts on the morning of December 14, 2004, to meet two friends at the Foxwoods Casino in Connecticut, to play bingo. En route the Chaveses stopped at the defendants' service station ("the station") on the southbound side of Interstate 395 in Plainville, Connecticut. Upon entering the station plaza, Joann Chaves pulled her car

---

[1]The facts recited here are those agreed to by the parties unless otherwise noted.

up to the curb adjacent to the station. Melissa Chaves asked her mother to move the car because there was a large puddle preventing her from exiting the car. Joann Chaves pulled the car forward several feet so that her daughter could exit without stepping in the puddle. Melissa Chaves left the car first and began walking into the station. Joann Chaves followed her, walking around the car to avoid the puddle. Once on the curb, Joann Chaves took only a few steps before she fell. She fell landing on the left side of her body. Because she was walking in front of her mother, Melissa Chaves did not witness the fall, but turned around and helped her mother up from the ground.

What caused Chaves to fall, and the conditions of the curb where she fell, are disputed between the parties. See Def.'s 56(a)(1) Stat. of Facts at ¶¶ 11 and 12 and Pl.'s 56(a)(2) Stat. of Facts at ¶¶ 11 and 12. At her deposition, Chaves gave the following testimony:

> Q: Did you see what you fell on?
> A: Not at the time I fell, but when I got up I did.
> Q: What did you see?
> A: It was all wet, cold. There was a puddle – almost looked like water, melted, like kind of slimy water, but – looked almost like ice, but very thin ice.
> Q: Was it ice?
> A: That's what it looked like to me.
> Q: You're sure [it] (sic) was ice?
> A: I was cold. My clothes were cold.
> Q: Was it water or was it ice?
> A: I'm going to say ice.
> Q: Are you sure it was ice?
> A: Yes.
> Q: And why are you sure?
> A: Because when I got up I could see little crystals where I had fallen.

Depo. of Joann Chaves at 66-7, Ex. A to Def.'s Mem. Later in her deposition, Chaves

admitted that in a recorded interview with a representative of her insurance company, she was asked "Did you notice any snow or ice on the pavement?" and she answered "There was no snow or ice. There was water on the curb where I pulled up and parked the car. I think there was water there." Id. at 71. She later clarified that answer in the following exchange:

> Q: At the time you went down you didn't notice any snow or ice on the pavement?
> A: No, I did not.
> Q: Did you see any water on the pavement?
> A: No.
> Q: Did you see anything on the pavement?
> A: After I fell I did.
> Q: What did you see?
> A: Moisture. Looked like maybe crystally water. My pants were wet. My shirt was wet.

Id. at 72. Finally, in an interrogatory response to the request to "state whether you observed any snow or ice in the vicinity where you allegedly slipped and fell," Chaves responded that she "observed water on the curb and felt/became wet as a result of the fall." Pl.'s Response to Def.'s First Set of Interrogatories at ¶ 20, Ex. D to Def.'s Mem.

## III. STANDARD OF REVIEW

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgement as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000). Once the moving party has met its burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor in order to defeat the motion.

3

Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." Carlton, 202 F.3d at 134. "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

## IV. DISCUSSION

Chaves was an invitee to the station and as such the defendants "owed [her] the duty to maintain its premises in a reasonably safe condition." Martin v. Stop & Shop Supermarket Companies, 70 Conn.App. 250, 251 (2002). To establish defendants' liability for Chaves's injury, she must prove that the defendants had "either actual or constructive knowledge of the specific defective condition which caused the injury and nor merely of conditions naturally productive of that defect." Boretti v. Panacea Co., 67 Conn.App. 223, 228 (quoting Kirby v. Zlotnick, 160 Conn. 341, 344-5 (1971). In reviewing defendants' motion, the court notes that the Connecticut Supreme Court has stated that summary judgment is "especially ill-adapted to negligence cases" because "the ultimate issue in contention involves a mixed question of fact and law, and requires the trier of fact to determine whether the standard of care was met in a specific situation." Halsted v. BJ's Wholesale Club, 2005 WL 1757199 (Conn.Super. 2005)(quoting Michaud v. Gurney, 168 Conn. 431, 434 (1975).

4

A. The Existence of a Defective Condition.

First, defendants argue that summary judgment should enter as to Chaves's complaint[2] because she cannot establish that a defective condition existed at the time that she fell. See Def.'s Mem. at 7-12. The parties agree that in order to establish the existence of a defective condition, Chaves must prove the existence of a condition other than the mere presence of water. See Def.'s Mem. at 8 and Pl.'s Mem. at 8. In this case, Chaves alleges that the defective condition was an accumulation of ice on the curb. See Pl.'s Mem. at 8.

Defendants argue that Chaves cannot prove the existence of ice on the curb because neither her own deposition testimony, her daughter's deposition testimony, or circumstantial evidence establish unequivocally that ice existed on the curb. See Def.'s Mem. at 8-12. Plaintiff counters that Chaves states at several points in her deposition testimony that she fell on ice. See Pl.'s Mem. at 8-9. Reviewing the deposition testimony recited above and drawing from it all inferences in favor of the non-moving party, the court concludes that a reasonable trier of fact could conclude on the basis of Chaves's deposition testimony that there was ice on the curb where she fell. While some of Chaves's testimony seems inconsistent, her statements that she was sure she fell on ice and her insistence that the water contained crystals of ice are sufficient to

---

[2]The court notes that Chaves's complaint states two counts. See Complaint (Doc. No. 1). However, each count is the same claim of negligence brought against each of the separate defendants. See id. The parties treat the counts as identical and the court will also treat them as identical for the purposes of deciding this Motion.

establish a material issue of fact as to the existence of ice.[3]

   B.  Causation of Chaves's Injury

Defendants next argue that summary judgment should enter as to Chaves's claim because she cannot prove that the ice caused her to fall. Under Connecticut law, causation in a negligence action requires a showing of causation in fact and proximate cause. See DeOliveira v. PMG Land Associates, L.P., __ A.2d __, 2008 WL 126233 at *3 (Conn.App. 2008). A cause-in-fact is one for which "the injury [would not] have occurred were it not for the actor's conduct" Id. A finding of proximate causes depends on whether "defendant's conduct is a substantial factor in bringing about the victim's injuries." Id. Defendant's conduct is a substantial factor when the harm that occurs is of "the same general nature as the foreseeable risk" created by that conduct. Heller v. D.W. Fish Realty Co., 93 Conn.App. 727, 734 (2006).

Defendant argues that Chaves cannot prove that the ice caused her to fall because she said twice during her deposition that she did not know what caused her to fall. See Def.'s Mem. at 14 citing J. Chaves depo. at 107 and 182. However, reading that testimony in light of other statements she made during her deposition creates the inference that Chaves meant that she did not know what caused her to fall at the moment she was falling. See Chaves depo. at 182 (asking Chaves if she knew what caused the fall "at the moment that you fell"). Chaves testified that after the fall, she

---

[3]Defendants further argue that Chaves's claims should not survive on the basis of her deposition testimony because it is "so replete with inconsistencies and improbabilities that a reasonable jury could not find [for her]." Jeffreys v. The City of New York, 426 F.3d 549, 553 (2d Cir. 2005). While the court agrees that Chaves's testimony seems to contain some inconsistencies, the court does not find that those inconsistencies rise to the level identified by the Second Circuit in Jeffreys. Id.

formed a belief that "crystally water or something, I don't know, Black ice maybe" caused her fall.  Id. at 183.

Defendants rely on Oglesby v. Teikyo Post University, 2002 Conn.Super.Lexis 3195 (2002), and Robbins v. Stop and Shop Co., 1999 Conn.Super.Lexis 1492 at *7 (1999) for the premise that a plaintiff cannot prove causation if she cannot state definitively what caused her fall.  Def.'s Mem. at 12-14.  While it is true that in both Oglesby and Robbins, the courts found that the plaintiffs were unable to state what caused their falls, both of those cases are factually distinguishable from the case at bar.  In Robbins, the court noted that the plaintiff was "almost ninety years old at the time of the injury" and that she had a number of medical conditions that suggested "a difficulty with peripheral vision."  Robbins, 1999 Conn.Super.Lexis 1492 at *1.  It was further evident from medical records produced as evidence in the case, that rather than tripping on a rock or other obstacle, the plaintiff may have simply lost her balance.  Id. at *8.  The Robbins court did not conclude that plaintiff could not prove causation merely because she could not state what caused her fall.  Id.  Nor do defendants in this case provide any evidence that Chaves was at risk to fall absent a defective condition. Oglesby is also distinguishable because in addition to being unable to state what caused her fall, the plaintiff in Oglesby "does not affidavits [sic] or other evidence in support of her objection to the motion for summary judgment that connects any alleged defect to her fall."  Oglesby, 2002 Conn.Super.Lexis 3195 at *8.  Chaves, in contrast, offers her own testimony and that of her daughter to establish the causal connection. The court finds that the testimony of the Chaveses as to the cause of Joann Chaves's fall is sufficient to establish a disputed issue of material fact as to the cause of her fall.

C.    Notice of the Defective Condition

Finally, defendants argue that summary judgment should enter as to Chaves complaint because she cannot demonstrate that they had actual or constructive notice of the ice on the curb.  In Connecticut, a plaintiff is required to show that "the defendant had had [sic] actual or constructive notice of the specific defect that caused the plaintiff's injuries."  Riccio v. Harbour Village Condominium Ass'n, Inc., 281 Conn. 160, 164 (2007).  "Mere proof of the presence of some snow or ice or both does not necessarily show a breach of a defendant's duty," so Chaves must also "offer evidence from which the jury could reasonably conclude that the defendant had notice of this condition and failed to take reasonable steps to remedy it after such notice."  Id. (internal quotation omitted).  Evidence of the "general conditions of the premises" does not suffice to demonstrate that defendants had notice of the defective condition.  Id. at 165 (declining plaintiff's invitation to change the "specific notice rule" for private, non-governmental property owners).

Chaves offers no evidence that defendants had actual notice of the ice on the curb, so she must show that they had constructive notice.  "Whether the defendant had constructive notice of this condition turns on whether the condition existed for a length of time sufficient for the defendant's employees, in the exercise of due care, to discover the defect in time to have remedied it."  Gulycz v. Stop and Shop Companies, Inc., 29 Conn.App. 519, 251 (1992)(citing "McCrorey v. Heilpern, 170 Conn. 220, 221 (1976)).

Defendants argue that Chaves's Complaint is analogous to that in Riccio, where the Connecticut Supreme Court upheld a directed verdict for the defendant where

plaintiff had failed to produce evidence that supported her theory that ice had formed due to snow melt. See Riccio, 281 Conn. at 165. However, Riccio is distinguishable for two reasons. First, the plaintiff in Riccio conceded that her only basis for asserting constructive notice were the general conditions the day she fell. Id. The court found that, even if it adopted plaintiff's view that evidence of the general conditions that day were sufficient to establish constructive notice, plaintiff had failed to produce evidence to establish what those general conditions had been. Id. Specifically, the plaintiff in Riccio failed to produce evidence regarding the air temperature in the "days and hours proceeding her fall." Id. In contrast, Chaves has produced evidence of the general conditions prior to her fall, specifically the weather report for the hours prior. See Weather Report for December 14, 2004, Ex. G to Pl.'s Mem.

Chaves's argument is also distinguishable from the plaintiff's position in Riccio because she asserts a basis for constructive notice other than the general conditions at the time of her fall. See Pl.'s Mem. at 10-13. Chaves argues that defendants had constructive notice of the defective condition because they had a policy of "continuously" monitoring the property for dangerous winter weather conditions. Id. In support of this position, Chaves cites Halsted v. BJ's Wholesale Club, 2005 WL 1757199 at *4 (Conn.Super. 2005) and Rush v. Santacroce, 2001 WL 100296 at *1 (Conn.Super. 2001). In both Halsted and Rush, the courts found that evidence of a commitment by the defendant to continuously monitor the property created a material issue of fact as to whether the defendant had constructive notice of a dangerous condition. Id. Here, Chaves points to the defendants' policy on "Snow and Ice Removal," which directs employees to "walk the lot regularly reporting and removing ice

9

and snow hazards promptly" and "acting to control changing conditions that are the recipe for ice . . . [i.e.] the temperature is dropping (i.e. overnight) or colder weather is in the forecast." Safety/Loss Prevention document on Ice and Snow Removal at 15, Ex F to Pl.'s Mem.

Rather than challenging the validity of the rule stated in Halsted and Rush, defendants argue that their Snow and Ice Policy requires employees to exercise extra vigilance only "during and after storms." Def.'s Reply Mem. at 7. The court disagrees. The court's reading of the portions of the Policy quoted above suggest that a reasonable trier of fact could infer that defendants' policy directed store employees to monitor the property for the existence of ice whenever icing was a possibility and not only during and after storms. Therefore, the court finds that Chaves has demonstrated a disputed issue of material fact as to whether defendants had constructive notice as to the existence of ice on the curb.

## V. CONCLUSION

For the forgoing reasons, defendants Motion for Summary Judgment is DENIED.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 25th day of January, 2008.

    /s/ Janet C. Hall
Janet C. Hall
United States District Judge